## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**ALEXANDRIA FAYE**                                                                 **PLAINTIFF**

**VERSUS**                                      **CIVIL ACTION NO.: 1:17-cv-00145-LG-RHW**

**MISSISSIPPI DEPARTMENT OF**
**HUMAN SERVICES, et al.**                                                          **DEFENDANTS**

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Defendants Mississippi Department of Human Services ("MDHS"), Harmony Raffeo

("Raffeo"), sued individually and as an agent for MDHS, Tequila Hall ("Hall"), sued individually and

as an agent for MDHS, and Erica Weary ("Weary"), sued individually and as an agent for MDHS

(collectively "Defendants") file their Memorandum of Law Supporting Motion to Dismiss.

## I. Introduction

In 2015, Alexandra Faye ("Faye") sued Defendants after her child O.F. was diagnosed with

gonorrhea while in foster care.[1] In 2016, the lawsuit was dismissed after Faye failed to amend her

complaint in compliance with the district court's order.[2]  Four months after the dismissal, Faye filed a

second lawsuit against Defendants, alleging the same facts asserted in *Faye I*. [1-2](Complaint

("Compl.")).  Faye still pleads no facts about the origin of O.F.'s infection. Faye again claims that since

O.F. was diagnosed with gonorrhea while in MDHS custody, Defendants must have been negligent.

Faye raises negligence claims under the Mississippi Tort Claims Act ("MTCA") against MDHS

---

[1] *See Faye v. Mississippi Department of Human Services, et al.*, Civil Action No. 1:15-cv-429-HSO-JCG ("*Faye I*").

[2] *Id.* at [Doc. 41, 42](Order and Final Judgment). On August 25, 2015, Faye, individually and on behalf of O.F. and K.S., filed suit against Defendants. *Faye I*, [1-2](Complaint). Defendants moved to dismiss the claims. *Id.* [15](Motion). This court ruled that Faye's first amended complaint contained "sparse facts as to what wrongful conduct is attributed to each of the named Defendants" and did not identify which legal claims were "being pursued against which Defendant and the facts supporting each claim." *Id.* [40](Opinion at 6). The court granted leave to Faye to amend her pleading. *Id.* at 8. After Faye failed to amend her complaint, the court entered a dismissal without prejudice. *Id.* [41-42](Order and Final Judgment).

and federal claims under 42 U.S.C. §1983 against Hall, Raffeo, Weary, individually and as agents of MDHS. In addition, Faye raises negligence and gross negligence claims against Weary and negligent infliction of emotional distress claims against Weary, Hall and Raffeo. All of Faye's claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for the failure to state a claim.

## II. Procedural Background

On January 17, 2017, Faye filed her second lawsuit[3] *("Faye II")* against Defendants.[4] [1-2] (Compl.). Faye sued MDHS and Hall, Raffeo, and Weary, individually and as "agents" for MDHS. *Id.* at p. 1. In large part, the "facts" alleged in *Faye II* are the same as those plead in *Faye I*.

Faye alleges[5] she was arrested on February 19, 2014, when her one-year-old and two-year-old were with her. *Id.* at ¶ 14. Faye asserts <u>MDHS took custody of the children at that time</u> and filed a petition with the Hancock County Youth Court seeking to remove custody of the children from Faye. *Id.* at ¶¶ 15-16. Faye claims that in contravention of the law, the youth court deemed O.F. and K.S. "neglected" and placed them in MDHS custody. *Id.* at ¶¶ 17-18. Faye alleges <u>Hall and Raffeo represented to her and the youth court that Weary and her son were the only residents in Weary's home, but that "other parties unknown to Faye resided in the home" and but for MDHS, Hall and Raffeo's negligence, it would have been known that others resided at Weary's home.</u> *Id.* at ¶¶ 18, 21.[6] Faye alleges MDHS, Hall and Raffeo placed the children with foster parent Weary. *Id.* at ¶ 21.

---

[3] *Faye II* was originally filed in Hinds County. Faye transferred the case to Harrison County and Defendants timely removed to this court. [1](Removal).

[4] In *Faye II*, Faye added fictitious parties "John and Jane Does I-X," alleging these are the person or persons who molested the children. Compl. at ¶¶47-48.  However, Watch Me Grow Learning Center, Inc. ("Watch Me Grow") which was named a defendant in *Faye I*, is not a named defendant in *Faye II*.

[5] The factual allegations which were not raised in the *Faye I*, but are plead here are underlined herein.

[6] Faye appears to allege that the so-called "others" residing in Weary's home are one or more of the "John and Jane Does" which she claims molested the children. Compl. at ¶¶47,48, 91(b). Yet, Faye then alleges the children were molested while in the care of Watch Me Grow Learning Center, Inc. *Id.* at ¶ 93.

2

Faye claims medical records show O.F. had a vaginal discharge. *Id.* at ¶ 28. Faye alleges that on June 11, 2014, Raffeo informed her "<u>she was transporting the minor children . . . to the hospital for examination for gonorrhea, the minor children having been screened and testing positive for the same at . . . , Coastal Family Health Center.</u>" *Id.* at ¶ 25. Faye claims she and Raffeo presented the children to Garden Park Medical Center "based on allegations of sexual assault." *Id.* at ¶ 26. Faye alleges Raffeo stated to hospital staff that O.F. tested positive for gonorrhea at Coastal Family Health Center. *Id.* at ¶ 27. Faye alleges that on June 12, 2014, she and an MDHS employee presented the children to Children's Hospital in New Orleans (*Id.* at ¶ 33), presumably for a medical exam. Faye claims <u>MDHS, "Tequila Hall [and] Harmony Raffeo . . . declined an examination by medical personnel for sexual assault.</u>"[7] *Id.* at ¶ 30. Faye alleges O.F. was treated with medication for gonorrhea and because medical staff were unable to collect a urine specimen from K.S., she was treated prophylactically. *Id.* at ¶¶ 32, 34, 35.

Faye alleges for the first time that MDHS, Hall and Raffeo "<u>reported to police that an assault occurred in the Weary home at or near 14095 St.</u>" *Id.* at ¶ 31.[8] Faye asserts MDHS substantiated sexual abuse of the children, but MDHS was unable to substantiate the source of O.F.'s infection. *Id.* at ¶ 37. Faye contends the children were "molested" while in MDHS custody. *Id.* at ¶ 31.

As in *Faye I*, Faye alleges gonorrhea has an incubation period of two to five days and is only

---

[7]Contrary to this allegation, Hall was not alleged to have accompanied Raffeo and Faye or "presented" the children to the hospital. Faye's allegations about allegedly declining a sexual assault exam are questionable in light of the allegations MDHS had the children medically examined three times. Compl. at ¶ 36. Regardless, these allegations do not bear on the pre-diagnosis conduct which is the focus of Faye's claims.

[8]MDHS employees are to report suspected abuse under Mississippi Code § 43-21-353 which provides:
> Upon receiving a report that a child has been sexually abused, ... , or ... any report of abuse that would be a felony under state or federal law, [MDHS] shall immediately notify the law enforcement agency in whose jurisdiction the abuse occurred and shall notify the appropriate prosecutor within forty-eight (48) hours ...

The allegation of the report of an assault "occurring in Weary's home" is inconsistent with Faye's claim that MDHS and its employees failed to conduct periodic inspections of Watch Me Grow daycare center (Compl. at ¶¶ 40-43) and the claim that the children were molested at Watch Me Grow daycare center. *Id.* at ¶ 93. It is reasonable to infer that Faye has no facts about where O.F. contracted gonorrhea.

3

transmitted through sexual conduct. *Id.* at ¶¶ 45-46. Faye surmises that because "O.F. and K.S. were diagnosed" after being in MDHS custody for four months, "[i]t is medically concluded that O.F. and K.S. contacted [sic] gonorrhea while in MDHS . . . custody." *Id.* at ¶ 46.[9]

Faye sues Defendants alleging they failed to follow their own procedures and polices when placing the children in Weary's care, failed to conduct background checks of individuals residing with Weary, failed to conduct periodic inspections of Weary's home and Watch Me Grow daycare center, among other things. *Id.* at ¶¶ 40-43.

Faye alleges claims under the MTCA against MDHS. *Id.* at ¶¶ 54-62. Under 42 U.S.C. § 1983, Faye asserts constitutional violations under the Due Process Clause of the Fourteenth Amendment against Hall, Raffeo and Weary, individually, and as agents of MDHS. *Id.* at ¶¶ 63-76, 85-89. Faye claims Plaintiffs had a right "to be free from state created danger or an increased state of danger while in the custody of the government"[10] and had a "right to family integrity without interference of the government absent due process." *Id.* at ¶¶ 51-52. Faye raises negligence and gross negligence claims against Weary, as well as negligent infliction of emotional distress claims against Hall, Raffeo and Weary. *Id.* at ¶¶ 90-94,101-103. Finally, Faye alleges *res ipsa loquitur* as a claim. *Id.* at ¶¶ 110-114. Faye seeks punitive damages for past, present and future damages for pain and suffering, medical expenses, mental and emotional anguish, attorneys' fees and expenses. *Id.* at ¶¶ 116-117.

---

[9]This allegation conflicts with the factual allegations that K.S. was treated "prophylactically" because a specimen could not be obtained from her. Compl. at ¶ 34.

[10]Faye pleads a "state created danger claim" in paragraph 51 of her complaint, but provides no facts to support such a claim. Faye appears to abandon the claim as it is not plead in any of the seven "Counts" of the complaint. Regardless, the Fifth Circuit has repeatedly declined to adopt the state-created danger doctrine. *Bright v. Tunica Cnty. Sch. Dist.*, 3:16-CV-197-DMB-RP, 2017 WL 3996409, at *8 (N.D. Miss. Sept. 11, 2017) (citing numerous cases). Consequently, any such claim must be dismissed for the failure to state a claim.

### III.  Federal Rule of Civil Procedure 12(b)(6) standard.

Under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must state a claim upon which relief can be granted or the complaint may be dismissed with prejudice as a matter of law. When a plaintiff sues a state official for constitutional violations, the plaintiff must plead that each government official, though his or her own individual actions, violated the constitution. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). These claims must be supported by enough facts to show "more than a **sheer possibility** that a defendant acted unlawfully." *Id.* (emphasis added). A complaint must include more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007).  To meet this standard, a plaintiff must allege sufficient facts to state a claim for relief that is plausible on its face. *Iqbal,* 129 S. Ct. at 1949. A claim is facially plausible when a plaintiff pleads factual content which allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *Id.* Where a complaint pleads facts which are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* (internal citations and quotations omitted).

To decide whether this standard has been met, courts first identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1951. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In assessing the plausibility of an entitlement to relief, courts may consider explanations for the challenged actions which are equally likely and lawful. *Id.*; *Twombly*, 550 U.S. at 567. Deciding whether a complaint has stated a plausible claim for relief is a context-specific task, requiring the court to draw on "its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. Here, Faye failed to allege sufficient facts to support more than a *sheer possibility* MDHS and its employees acted unlawfully or violated a constitutional right. Faye's claims must, therefore, be dismissed.

5

## IV.  Argument

### A. Faye's federal claims should be dismissed.

#### 1. Title 42 U.S.C. § 1983 claims and qualified immunity.

Faye asserts claims under 42 U.S.C. §1983 against Hall, Raffeo and Weary. Compl. at Count II & III. Section 1983 does not create substantive rights, but instead provides a remedy for violations of federal statutory and constitutional rights.[11] To state a cause of action under § 1983, a plaintiff's claim for relief must allege facts establishing: (1) the plaintiff has been deprived of a right secured by the Constitution or federal law; and (2) defendant acted under color of state law. *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012). Section 1983 imposes liability for violations of Constitutional rights, not violations of duties of care arising out of tort law. *Lynch v. Cannatella*, 810 F.2d 1363, 1375 (5th Cir. 1987).

In their responsive pleading, Hall, Raffeo and Weary raised the defense of qualified immunity. [3](Answer); [4](Am. Answer). Qualified immunity is a well-settled doctrine which protects governmental employees acting within their discretionary authority if their actions do not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects officials from liability in civil actions, from having to withstand the burdens of broad ranging discovery and from the burdens of trial. *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985). Further, qualified immunity allows state officials to exercise their official duties with independence and without fear of personal liability and harassing lawsuits against them. *Elliott v. Perez*, 751 F.2d 1472, 1476-77 (5th Cir. 1985). By providing governmental employees with

---

[11]Title 42 U.S.C. §1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, ..., any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

the ability to reasonably anticipate when their acts or omissions may give rise to liability and damages, qualified immunity provides protection to all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs,* 475 U.S. 334 (1986). Faye has not alleged sufficient facts to overcome the defense of qualified immunity.

### 2. Weary is not a state actor for purposes of a 42 U.S.C. § 1983-claim.

This court recently ruled that foster care parents are not state actors for purposes of 42 U.S.C. § 1983-actions despite the fact that a state regulates foster care and extends governmental tort liability and immunity to foster parents. *Andrew Faulkner v. Mississippi Dept. of Human Serv., et al.,* Cause No. 1:16CV158-LG-RHW, 2016 WL 3661521, *2 (S.D. July 5, 2016). In *Faulkner,* like here, the plaintiff alleged the foster parent failed to follow MDHS policies and procedures, and that her actions were committed under color of law and under her authority as an officer, agent, or employee of the MDHS. *Id.* The plaintiff's basis for holding the foster parent responsible as a state actor was that she was a foster parent. *Id.* This court held such allegations were insufficient to show the foster parent was a state actor for purposes of § 1983. *Id.* (citing *Rayburn v Hogue,* 241 F.3d 1341, 1347-48 (11th Cir. 2001)). After noting that the Fifth Circuit had not addressed the issue, this court recognized other circuits which have held that a foster parent is "not a state actor for purposes of § 1983." *Id.* (citing *Rayburn,* 241 F.3d at 1348; *Milburn v. Anne Arundel Cty. Dep't of Soc. Servs.,* 871 F.2d 474, 479 (4th Cir. 1989)). As this court observed, the circuit courts in *Rayburn* and *Milburn* reasoned that the fact foster parents are in a contractual relationship with and are regulated by the state, does not transform otherwise private parties into state actors. *Faulkner,* 2016 WL 3661521, *2 (citing *Rayburn,* 241 F.3d at 1348; *Milburn,* 871 F.2d at 477; *K.H. Through Murphy v. Morgan,* 914 F.2d 846, 852 (7th Cir. 1990) (stating foster parents are not state agents for constitutional purposes).

Faye conceded foster parents are not state actors for purposes of § 1983 in *Faye I,* but argued they can be if a plaintiff shows a "pervasive entwinement" between the private person and the state. *Faye*

*I*, [40](Opinion at fn. 4). Here, however, Faye does not allege Weary was "so pervasively entwined" with the state so as to have become a state actor for § 1983-purposes. Section 1983 actions against foster parents, with few exceptions,[12] are generally dismissed for failure to state a cause of action. *Id.* Accordingly, the 42 U.S.C. § 1983 claims against foster parent Weary must be dismissed.

### 3. MDHS and Hall and Raffeo in their official capacities are not "persons" under 42 U.S.C. § 1983.[13]

Although the complaint appears to only seek state law claims against MDHS, to the extent that Faye seeks damages against MDHS through Hall and Raffeo "as agents of MDHS" under § 1983, those claims must be dismissed. The United States Supreme Court has held that states, "arms of a state" and state officials sued in their official capacity are not "persons" within the meaning of § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Thus, states, state agencies and officials sued in their official capacity, are not amenable to suit under §1983. *Will*, 491 U.S. at 71. MDHS is a Mississippi state agency and has been deemed an "arm of the state." Miss. Code Ann. §§ 43-1- 1–43-1-51; *Millsap v. Crosby*, 2014 WL 3548842, *2 (S.D. Miss. Jul. 17, 2014); *Williams v. Berry*, 977 F. Supp. 2d 621, 628 (S.D. Miss. 2013).

Faye alleges claims against Hall and Raffeo in their capacity as "agents of MDHS." Compl. at p. 1. Hall and Raffeo are MDHS employees. *Id.* at ¶¶ 5-6. A suit against a state official in an official capacity is actually a suit against the official's office. *Brandon v. Holt*, 469 U.S. 464, 471(1985). Such suits are "no different from a suit against the state itself." *Will*, 491 U.S. at 71. Because a state official acting in her official capacity is not a "person" under § 1983 and because claims against Hall and Raffeo in

---

[12]*See also, Brown v. Hatch*, 984 F. Supp. 2d 700, 708 (E.D. Mich. 2013) (holding a foster parent was not a state actor); *Marr v Schofield*, 307 F. Supp. 2d 130 (D. Me. 2004)(holding that since there was no claim the state jointly participated in abuse to foster child or that foster mother's abuse toward the child was entwined with that of state actors, plaintiff had not shown, through application of available tests that a private actor can be considered state actor).

[13]Because she is not a state actor and cannot be sued under 42 U.S.C. § 1983, Weary is not included in further analysis of Faye's federal claims.

their "official capacity" are essentially claims against MDHS, Faye's "as-agents-of-MDHS-claims" must be dismissed. *Kentucky v. Graham*, 473 U.S. 159 (1985); *Klingler v. Univ. of S. Miss., USM*, 612 F. App'x 222, 226 (5th Cir. 2015)(dismissing suit against a state university and employees in their official capacities).

### 4. MDHS, Hall and Raffeo are immune from suit under the Eleventh Amendment.

Faye's suit against MDHS, Hall and Raffeo should be dismissed because the Eleventh Amendment to the United States Constitution guarantees to a state, its agencies or officials, in their official capacity, immunity from liability. The Eleventh Amendment states "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . ." U.S. Const. Amend. XI. This amendment guarantees that "nonconsenting States may not be sued by private individuals in federal court." *Board of Trustees of the Univ. of Al. v. Garrett,* 351 U.S. 356, 363 (2001) (citations omitted). The Supreme Court has held that Eleventh Amendment immunity encompasses "suits by citizens against their own States." *Garrett,* 351 U.S. at 363; *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). This immunity extends to a state's agencies or departments and cannot be avoided by suing an "arm of the state or a state agency." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993); *Williams v. Dallas Area Rapid Transit,* 242 F.3d 315, 318 (5th Cir. 2001).

Moreover, Congress has not abrogated the states' immunity for suits brought pursuant to §1983. *Will*, 491 U.S. at 71; *Delaney*, 2013 WL 286365, at *3 (holding that there has been no congressional abrogation of state sovereign immunity as to claims under §1983). A state waives its Eleventh Amendment immunity only where such a waiver is demonstrated by express language or by overwhelming implications from the text which can only be construed as a waiver of immunity. *Edelman v. Jordan*, 415 U.S. 651, 673 (1974). The MTCA provides that "[n]othing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh

Amendment to the Constitution of the United States." Miss. Code Ann. § 11-46-5(4). As a result, MDHS is an arm of the State, protected by Eleventh Amendment/Sovereign Immunity from both suit and liability. *Millsap*, 2014 WL 3548842, at *2; *Williams*, 977 F. Supp. 2d at 628 ("MDHS has immunity under the Eleventh Amendment"). Any federal claims against MDHS, directly or through its employees as "agents of MDHS" must be dismissed. Because Eleventh Amendment immunity extends to state officials acting in their official capacity, the claims against Hall and Raffeo "as agents of MDHS," must also be dismissed. *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) ("the principle of state-sovereign immunity generally precludes actions against state officers in their official capacities") (citations omitted).

> **5. Faye's allegations are conclusory such that Faye fails to plead sufficient facts to support her § 1983-claims or to overcome the qualified immunity defense**.

To assess a Rule 12(b)(6) motion, the court's first task is to discern from the complaint the factual allegations which are not entitled to the assumption of truth. *National Cas. Co. v. Franklin County*, 718 F. Supp. 2d 785, 787 (S.D. Miss. 2010). The court is not required to accept "unsupported legal allegations, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events." *Id.* (citation omitted).

Faye asserts in the "fact" section of the complaint as follows:

> 17. Pursuant to Miss. Code Ann. ¶ 43-21-105, the Hancock County Youth Court deemed O.F. and K.S. as neglected in contravention of clear law.

This allegation is clearly an unsupported legal conclusion. There are no allegations Faye challenged and successfully appealed the youth court's decision regarding custody. Moreover, this court is not being called upon to review the youth court's decision regarding custody. Faye next asserts:

> 20. But for the negligence and gross negligence of MDHS, Tequila Hall, Harmony Raffeo . . . , it would have been known that others resided at [Weary's] residence.

The allegation MDHS, Hall and Raffeo were negligent or grossly negligent is not a factual

allegation. It is legal conclusion not accepted as true for this motion to dismiss.

Next in paragraphs 22-24 of the complaint, Faye claims:

With deliberate indifference to the safety and constitutional rights guaranteed the Plaintiffs, MDHS, Tequila Hall, [and] Harmony Raffeo, . . . failed to appropriately screen the Weary home for the placement of the vulnerable infant female children O.F. and K.S.[,] failed to properly inspect the Weary home at regular intervals[, and] [b]ut for the negligence and gross negligence of MDHS, Tequila Hall, Harmony Raffeo . . . it would have been known that others resided at this residence.

These are not factual allegations at all. Rather, they are legal claims and unsupported legal conclusions which this court does not accept on a motion to dismiss. Faye contends next that

25. . . . Raffeo informed Alexandria Faye that she was transporting the minor children . . . to the hospital for examination for gonorrhea, the minor children having been screened and testing positive for the same at a medical clinic, Coastal Family Health Center.

This allegation conflicts with the allegation that K.S. was treated prophylactically for gonorrhea because "no facility was able to collect a urine specimen from K.S. for sexual infections prior to treatment." Compl. at ¶ 34. Faye also alleges "O.F. tested positive for gonorrhea at three different medical facilities"(*Id.* at ¶¶ 27, 36), but this allegation was not raised as to K.S. Moreover, the claim that *both* children were *"screened and tested positive for gonorrhea at Coastal Family Health Center"* was not asserted in *Faye I.*  Considering the fact that Faye's own allegations raise doubts about whether *both* children tested positive for gonorrhea (*Id.* at ¶ 25), these allegations are not well-plead and should not be given an assumption of truth.

Next, in paragraph 29 of the complaint, Plaintiff alleges "Harmony Raffeo declined a sexual assault examination." In paragraph 30, however, Faye alleges that "[w]ith deliberate interference to the safety and constitutional rights guaranteed the Plaintiffs, MDHS, Tequila Hall, [and] Harmony Raffeo, . . . declined an examination by medical personnel for sexual assault.*" Id.* at ¶ 30.  These allegations are unsupported legal conclusions which are not entitled to an assumption of truth as they conflict with the allegations describing three occasions on which the children were taken for examination and treatment

by MDHS employees at (1) Coastal Family Health Center, (2) Garden Park Medical Center and (3) Children's Hospital of New Orleans. Compl. at ¶¶ 25, 26 33, 36. These facts demonstrate that MDHS and its employees were performing their investigative functions in ascertaining the correct diagnosis. Faye acknowledges MDHS's investigations when she admitted MDHS substantiated sexual abuse of the minor children, but could not substantiate the source. *Id.* at ¶ 37. Stated another way, MDHS's investigation did not reveal information of the identity of a person who may have been the source of O.F.'s infection.  Further, Faye alleges MDHS and its employees reported to authorities the possible sexual assault, which by law they were required to do. *Id.* at ¶31.[14] The allegation Hall "declined an examination" is also suspect because Hall was not alleged to have "presented" the children to any medical facility for testing or treatment. Nonetheless, the allegations about the "declining of any testing" do not bear on the crux of Faye's claims which involve the pre-diagnosis conduct of MDHS and its employees. Next, Faye alleges:

> 31. [The children] were molested while in the custody of [MDHS] . . .

Faye, however, has not pleaded facts supporting the conclusion that either child was molested by a particular person, an MDHS employee, Weary or those in her home. There is only speculation. While there was an allegation of abuse, there are no facts to support the legal conclusion the children were in fact "molested." Conspicuously absent from the complaint is a claim O.F. was not infected with gonorrhea before entering into MDHS custody.  All other means of transmission of gonorrhea, which requires expert opinion, have not been eliminated for an inference to be drawn that either child was molested. This allegation is a legal conclusion not entitled to the assumption of truth. Faye next complains:

> 40. With deliberate indifference to the safety and constitutional rights guaranteed the Plaintiffs,[MDHS], Hall, Raffeo, [and] Weary, . . . failed to follow their own procedures

---

[14] *See* Miss. Code Ann. § 43-21-353.

and policies when it placed the minor children in the custody of Erica Weary.

Defendants' alleged failure failed to follow their own procedures in placing the children in Weary's care is an legal conclusion improperly cast as a factual allegation. It is a bald accusation lacking factual support. Faye does not identify the policies and procedures allegedly violated. These allegations are not entitled to the assumption of truth for analyzing this motion to dismiss. Faye then alleges:

> 41. With deliberate indifference to the safety and constitutional rights guaranteed the Plaintiffs, [MDHS], Hall, Raffeo, [and] Weary, . . . failed to follow their own policies and procedures when they failed to conduct appropriate background checks as to all individuals who would reside in the foster home where the minor children were placed.

This too is a bald accusation not entitled to the assumption of truth. Faye does not challenge the fact that Weary was a licenced foster parent. As part of becoming a licensed foster parent, background checks of the foster parents and those residing in the foster home are required. Miss. Code Ann. § 43-15-6 (requiring criminal background checks for providers of children's services in residential settings).[15] The reasonable inference is that appropriate background checks were conducted prior to Weary becoming a licensed foster parent in the first instance. Next, Faye asserts:

> 42. With deliberate indifference to the safety and constitutional rights guaranteed the Plaintiffs, [MDHS], Hall, Raffeo, and Weary, . . . failed to follow their own policies and procedures when they failed to conduct periodic inspection of the foster home.

This allegation is also legal conclusion couched as a factual allegation not bolstered by facts. Bald accusations are not assumed true in the plausibility analysis for motions to dismiss and these should not be assumed here. Faye next claims:

> 43. With deliberate indifference to the safety and constitutional rights guaranteed the Plaintiffs, [MDHS], Hall, Raffeo, [and] Weary, and . . . failed to follow their own policies and procedures failed to conduct periodic inspections of the daycare center Watch Me Grow Learning Center, Inc.

As with the other allegations regarding MDHS policies and procedures, this allegation is a bare

---

[15]*See also*, Uniform Rule of Youth Court Practice 11(b)(2) which provides that "[n]o child in the custody of the [MDHS], ... shall be placed in a foster care setting that has not been licensed or approved as meeting the [MDHS], Division of Family and Children's Services licensure standards ..."

assertion, unsupported with facts, and not entitled to the assumption of truth on a Rule 12(b)(6) motion to dismiss. Next, Faye alleges:

> 44. Gonorrhea has an incubation period of 2 to 5 days. O.F. and K.S. were in custody of [MDHS] . . . for almost four months before being diagnosed with gonorrhea.

> 45. Gonorrhea is a sexually transmitted disease which is only transmitted through sexual conduct.

These allegations are unsupported medical conclusions which require expert testimony or opinion and should not be considered true on a motion to dismiss. At this stage, the court should not make assumptions about the transmission of gonorrhea in children. As such, these factual allegations should not be considered true for purposes of this motion. Faye alleges next:

> 46. Because [the children] were diagnosed on or about June 11, 2014 and had been in custody over four months with [MDHS] . . . [i]t is medically concluded that [the children] contacted gonorrhea while in MDHS . . . custody . . .

First, the allegation "*O.F. and K.S.* were diagnosed" with gonorrhea is contradicted by Faye's allegations that no facility was able to obtain a specimen from K.S. to test and they, therefore, treated K.S. "prophylactically."[16] From these allegations, it is reasonable to infer that because medical personnel were unable to test K.S. for disease and thus unable to diagnose K.S., but nonetheless treated her as a preventative measure. Second, the allegation that it is "medically concluded" the children were "sexually assaulted" is a medical-legal conclusion which can only be determined with use of expert opinion. This legal conclusion cast as a factual allegation should not be accepted as true. Faye then claims:

> 50. The contraction of a sexually transmitted disease while in custody of [MDHS] . . . could not have occurred in the absence of negligence on behalf of the one or more of the named defendants.

Negligence by Defendants cannot be assumed, it must be proved. These claims are medical-legal conclusions. Faye can only speculate that O.F. contracted the infection due to negligence by the

---

[16]Prophylactic means "guarding from or preventing the spread or occurrence of disease or infection; tending to prevent or ward off : preventive. See https://www.merriam-webster.com/dictionary/prophylactic

Defendants because there are no facts linking the two. With no knowledge of how and when O.F.

contracted gonorrhea, the negligence of the Defendants cannot be assumed or accepted as true.

In Counts II and III of the complaint, Faye asserts the same allegations and claims against Hall

and Raffeo:[17]

> 64. By and through the conduct of Defendant[s] . . . , the Plaintiffs were deprived of
> constitutional rights, specifically their Due Process rights and right to family integrity
> under the Fourteenth Amendment of the United States Constitution. As a result thereof,
> the Plaintiffs suffered bodily harm injury, pain and suffering, and emotional distress. .
> . .

*Id.* at ¶¶64, 71. Paragraphs 64 and 71 contain only claims and legal conclusions. The only facts which

may be given an assumption of truth for Rule 12(b)(6) purposes about Hall and Raffeo are that they

assigned the children to the care of Weary, consistent with the youth court order, they represented that

Weary and her son resided in Weary's home,[18] they sought testing and treatment for the children and

they reported the possible assault, as they were required to do. *Id.* at ¶¶ 21, 19, 25-27, 31. There are no

facts supporting the legal conclusion they violated Plaintiffs' rights. Next, Faye claims:

> 65. Such acts of [Hall/Raffeo] were committed under color of law and under each
> individual's authority as an officer, agent, or employee of [MDHS] and were reckless,
> malicious, intentional, and committed with deliberate and reckless indifference to the
> health and safety of [the children].  As a result, the Plaintiffs suffered bodily harm,
> injury, pain and suffering and emotional distress.

*Id.* at ¶¶ 65; 72.  Paragraph 65 and 72 are legal claims and conclusion which do not identify the acts

allegedly committed by Hall and Raffeo which allegedly violated Plaintiffs' constitutional rights. The

only "facts" contained in the complaint about Hall and Raffeo are that they assigned the children to the

care of Weary under court order, represented that Weary and her son resided in the foster home, sought

testing and treatment for the children and reported the possible assault to authorities. *Id.* at ¶¶ 21, 19,

---

[17]The allegations contained in paragraphs 64-69 of the complaint against Raffeo are identical to the allegations in
paragraphs 71-76 against Hall and thus are consolidated here for argument.

[18]The insinuation that MDHS, Hall or Raffeo made any misrepresentations to anyone in connection with the
placement of the children is specifically denied.

25-27, 31. These allegations are not accepted as true on a Rule 12(b)(6) motion. Faye then alleges:

> 66. The Plaintiffs' injuries and damages were also directly and proximately caused by the following intentional, reckless, careless, negligent and/or deliberately indifferent acts and omissions of [Raffeo/Hall], but not limited to:
>
> a. The failure of [Hall/Raffeo] to properly investigate, to monitor, direct, and supervise the policies and procedures of the [MDHS] and it subdivisions thus depriving members of the public, including the Plaintiffs, of their rights under the United States Constitution; . . .

*Id.* at ¶¶ 66(a); 73(a). Paragraphs 66(a) and 73(a) are legal claims and conclusions. Faye does not identify the procedures and polices allegedly violated or allege Hall or Raffeo held positions where they were required to "supervise MDHS's policies and procedures." The only facts specific to Hall and Raffeo are that they placed the children in Weary's care, represented that Weary and her son lived in Weary's home, sought testing and medical testing and treatment for the children and reported to authorities the possible assault. *Id.* at ¶¶ 19, 21, 25-27, 31. There are no facts from which to draw a reasonable inference that any MDHS policy or procedure was violated by Hall or Raffeo. Instead, there are only unsupported assertions of wrongdoing. Faye alleges next:

> b. The failure of [Hall/Raffeo] to properly and adequately screen, hire and train the foster parents, employees and agents in the Police Department and to promulgate and enforce rules and regulations regarding the manner and techniques for the hiring, control, supervision and training of their employees and foster parents, thus depriving members of the public, including the Plaintiffs, of their rights under the United States Constitution.

*Id.* at ¶¶ 66(b); 73(b). Paragraphs 66(b) and 73(b) are legal claims and conclusions. There are no allegations Weary was **not** a licensed foster parent. Indeed, Faye asserts Weary was the children's "foster parent." *Id.* at ¶ 7. Under the regulations promulgated by MDHS's Division of Family and Children Services,[19] foster parents are vetted through a process which includes training and criminal background checks of members of the foster home. Miss. Code Ann. § 43-15-6 (foster parents must complete at least twelve training hours). There are no claim Weary did not possess a valid license or did not

---

[19]*See* Mississippi Code § 43-15-105, infra fn 21.

16

participate in the application process. In addition, there are no allegations Hall and Raffeo held positions with MDHS requiring them to promulgate any polices or procedures regarding the hiring, control, supervision and training of their employees, the Police Department and foster parents or which policies and procedures that they allegedly failed to enforce. The only facts Faye alleges regarding Hall and Raffeo involves the placement of the children in Weary's care, the representation that Weary and her son resided in the foster home, the assistance in seeking testing and medical treatment of the children and the report to authorities about possible abuse. *Id.* at ¶¶ 19, 21, 25-27, 31. Faye next claims:

> c. The failure of [Hall/Raffeo] to enforce proper and appropriate procedures and regulations which would have controlled or governed the actions of its officers, agents, foster parents, and/or employees under the circumstances outlined in this Complaint as well as for screening and hiring its employees, agents, and foster p. [sic] thus depriving members of the public, including the [Plaintiffs], of their rights under the United States Constitutions.

*Id.* at ¶ 66(c ); 73(c). Paragraphs 66(c) and 73(c) are legal claims and conclusions. Again, there are no facts supporting the conclusory allegations Hall and Raffeo failed to enforce MDHS procedures and regulations regarding the actions of MDHS's "officers, agents, foster parents, and/or employees." Faye does not identify the "proper and appropriate procedures" which were allegedly not enforced, nor are any facts that Hall or Raffeo held positions in which they were responsible for screening or hiring MDHS employees, agents or foster parents. The only facts regarding Hall and Raffeo's conduct in the complaint concern the placement of the children in Weary's care, representation that Weary and her son lived in her home, the testing and treatment for the children and the report of possible abuse to authorities. *Id.* at ¶¶ 19, 21, 25-27, 31. Faye then alleges Hall and Raffeo failed

> d. . . . to adequately screen foster parents for employment and placement and to adequately supervise the actions of officers, agents, foster parents, and/or employees under the circumstances outlined in this Complaint; thus depriving members of the public, including, the Plaintiffs of their rights under the United States and Mississippi Constitutions.

*Id.* at ¶¶ 66(d); 73(d). Paragraphs 66(d) and 73(d) are legal claims and conclusions. These generic

allegations fail to satisfy the requirements for pleading the specific conduct of a state actor in a § 1983 action with supporting *factual allegations*. The allegations Hall and Raffeo failed to adequately screen and supervise foster parents are conclusory and insufficient to support a constitutional claim. There are no allegations Hall and Raffeo held positions requiring them to screen foster parents for employment. Further, there are no allegations Weary harmed the children or of any prior incidents in Weary's home about which Hall and Raffeo should have known. Next, Faye alleges Hall and Raffeo failed

> e. . . .to provide reasonable protection from physical injury to [the children] in order to avoid the risk of harm to them under the circumstances then and there existing, thus depriving. . . Plaintiffs, of their rights under the United States and Mississippi Constitutions.

*Id.* at ¶¶ 66(e), 73(e). Paragraphs 66(e) and 73(e) are legal claims and conclusions. The bare assertion of failing to provide "reasonable protection" is insufficient without supporting facts to meet the plausibility pleading standard on a motion to dismiss. The complaint only states Hall and Raffeo placed the children in Weary's care, represented that Weary and her son lived in the foster home, sought testing and treatment for the children and reported possible abuse to authorities. *Id.* at ¶¶ 19, 21, 25-27, 31. There are no facts undergirding the empty claim Hall and Raffeo failed to provide the children "reasonable protection." Further, there are no facts about prior incidents in Weary's home or that Hall and Raffeo knew of any prior incidents in Weary's home. The children were placed in a licensed foster home which, according to the requirements for Mississippi foster homes, was vetted prior to Weary receiving a license. Even more, there are no allegations that the authorities to whom Hall or Raffeo reported the possible assault determined "the source" of O.F.'s infection. Faye then claims:

> f.  The failure of [Hall/Raffeo] to supervise, investigate, and screen the foster home of [the children] post-placement [deprived] . . . Plaintiffs of their rights under the United States and Mississippi Constitutions.

*Id.* at ¶¶ 66(f), 73(f). Paragraphs 66(f) and 73(f) are legal claims and conclusions.  In the absence of facts supporting these conclusory allegations, Faye fails to state a claim of a constitutional violation. The only

facts in the complaint about Hall and Raffeo are that they placed the children with a licensed foster home consistent with the youth court's order, represented that Weary and her son lived in the foster home, sought testing and treatment for the children and reported to authorities a possible assault. *Id.* at ¶¶ 19, 21, 25-27, 31.  Legal conclusions cast as factual allegations without factual enhancement are not given an assumption of truth on Rule 12(b) motions.  Next, Faye asserts:

> 67.  [Hall/Raffeo] had knowledge of or, had it [sic] diligently exercised it [sic] duties to screen instruct, investigate train, supervise, control and discipline on a continuing basis, should have had knowledge that the wrongs were done, as hereto before alleged, or other unlawful or unconstitutional acts, were going to be committed and were committed prior to the incident complained of herein.  [Hall/Raffeo] had power to prevent or aid in preventing the commission of said wrongs, could have done so, and intentionally, knowingly, or with deliberate indifference to the rights of the inhabitants of the public and the Plaintiffs, failed to do so.

*Id.* at ¶¶ 67, 74.  Faye again fails to support conclusory allegations with facts of specific actions as to Hall and Raffeo. Given that MDHS investigated the child abuse allegations and were unable to identify the source, it is reasonable to infer Hall and Raffeo had no knowledge of any "wrongs" committed by a specific person. In addition, there are no facts to support the conclusory allegation Hall and Raffeo should have known of unnamed "wrongs." These allegations are too specious to state a constitutional violation and satisfy the pleading requirements.

Faye's twenty-seven-page complaint does not contain facts sufficient to support her § 1983 claims against Hall and Raffeo or overcome the qualified immunity defense.  The only "facts" which can be given the assumption of truth as to Hall and Raffeo are the allegations that (1) MDHS took custody of the children after Faye's arrest, (2) pursuant to the youth court order, they placed the children in the care of Weary, (3) they represented Weary and her son lived in her home, (4) they sought medical examinations for the children on three separate occasions, (5)  O.F. was diagnosed with gonorrhea and was treated, while K.S. was treated prophylactically, (6) they reported a possible assault to authorities as they were required to do, and (7) they investigated the source of O.F.'s infection but could not

substantiate the source. *Id.* at ¶¶ 19, 21, 26, 27, 31, 36, 37. There are no other "facts" about Hall and Raffeo in the complaint to support the conclusory allegations that their conduct violated any MDHS policy or procedure or violated any constitutional right of the Plaintiffs.

As a result, the complaint contains virtually no *facts* establishing either that the conduct complained of is a violation of a constitutional right or that Hall and Raffeo acted in such a way to establish liability for any constitutional violation. Legal conclusions such as these, although appropriate to framing the issues, must be supported by facts. *Iqbal,* 129 S. Ct. at 1951. The factual allegations as to the conduct of Hall and Raffeo are so bare "that they are in essence conclusory even if they include more than an assertion that an element of a cause of action was satisfied." *Rodriguez-Vives v. Puerto Rico Firefighters Corps of Puerto Rico*, 743 F.3d 278, 286 (1st Cir. 2014)(citation omitted). The complaint makes it clear that Faye is merely speculating about Hall and Raffeo's conduct, and thus, has not shown more than "sheer possibility" of wrongdoing. Faye's allegations are conclusory, not entitled to a presumption of truth, and fail to demonstrate the conduct of Hall and Raffeo violated a clearly-established statutory or constitutional right. *Anderson*, 483 U.S. at 640-641. For these reasons, Faye has failed to state a claim for a constitutional violation. The federal claims against Hall and Raffeo must be dismissed.

**B. The MTCA provides immunity for all of the state law claims.**

**1. Claims of improper licensing and investigation of the foster home are barred.**

The crux of Faye's claims against MDHS are that it breached duties to investigate and screen the children's foster home prior to placement, failed to supervise and inspect the foster home after placement, failed to ensure the safety of the children and failed to investigate unidentified "claims." Compl. at ¶¶ 54-56.[20] Mississippi Code § 43-15-105 directs that MDHS's Division of Family and

---

[20]To the extent Faye seeks damages for the failure to train and supervise employees against MDHS, the MTCA provides immunity to MDHS for such claims under Mississippi Code § 11-46-9(1)(g). Section 11-46-1(g) provides sovereign immunity for claims "arising out of the exercise of discretion in determining whether or not to seek or provide the resources necessary for. . . the hiring of personnel and, in general, the provision of adequate governmental services; . . ." This court has held that failure to hire and train claims are excluded from the

Children's Services is the licensing authority which establishes the licensing requirements for foster homes and parents and sets forth the procedures to determine adherence to the licensing requirements.[21] *See also* Miss. Code Ann. § 43-15-101 (purpose of the article). Mississippi Code § 43-15-115 specifically allows MDHS employees to inspect the home of a foster parent. Under Mississippi's statutory scheme, the law grants MDHS and its employees absolute immunity for all of these claims raised by Plaintiffs. *See* Miss. Code Ann. § 43-15-125.

Immunity for MDHS's actions in the licensing of foster homes and approving foster parents as suitable for child placement, as well as the procedures for adhering to the licensing requirements for foster homes, is mandated by Mississippi Code § 43-15-125 which provides that MDHS and its employees "**shall not be held civilly liable for any . . . actions taken pursuant to this article.**" *Id.* (emphasis added). Section 43-15-125 contains no exceptions and unambiguously applies to **"any**

---

MTCA's waiver of sovereign immunity. *Franklin v. N. Cent. Narcotics Task Force*, No. 5:15cv120-DCBMTP, 2016 WL 367666, at *4 (S.D. Miss. July 7, 2016) (finding defendants' "decisions regarding the employment, supervision, assignments, training, and retention of officers were undoubtedly exercising a discretionary function that affects public and social policy); *Meaux v. Mississippi (Miss. Dep't of Pub. Safety/Ms Hwy Patrol)*, 2016 U.S. Dist. LEXIS 21773 (S.D. Miss. Feb. 23, 2016) (hiring and training are discretionary duties; "the State cannot be liable for the performance of [these duties] under the MTCA."). Section 11-46-9(1)(g) also gives MDHS immunity for claims stemming from the discretion in determining whether to seek or provide resources for the training and supervision of its employees. Thus, any claims of negligent training and supervision of its employees against MDHS are excluded from the waiver of sovereign immunity under § 11-46-9(1)(g) and should be dismissed.

[21]Mississippi Code § 43-15-105 provides:
    (1) The [MDHS's] Division of Family and Children's Services shall be the licensing authority for the department, . . .The division shall make and establish rules and regulations regarding:
    (a) Approving, extending, denying, suspending and revoking licenses for foster homes, residential child-caring agencies and child-placing agencies; (b) Conditional licenses, variances from department rules and exclusions; (c) Basic health and safety standards for licensees; and (d) Minimum administration and financial requirements for licensees.
    (2) The division shall:
    (a) Define information that shall be submitted to the division with an application for a license; (b) Establish guidelines for the administration and maintenance of client and service records, including staff qualifications, staff to client ratios; (c) Issue licenses in accordance with this article; (d) Conduct surveys and inspections of licensees and facilities; (e) Establish and collect licensure fees;(f) Investigate complaints regarding any licensee or facility; (g) Have access to all records, correspondence and financial data required to be maintained by a licensee or facility; (h) Have authority to interview any client, family member of a client, employee or officer of a licensee or facility; and (i) Have authority to revoke, suspend or extend any *license* issued by the division.

**actions"** of MDHS and its employees in the licensing and regulation of foster homes. As such, MDHS is immune from claims involving the inspection and investigation of foster homes and foster parents.

The MTCA also has retained sovereign immunity for claims arising out of the issuance of a license, approval, or similar authorization where an employee is permitted to determine whether such authorization should be issued. Mississippi Code § 11-46-9(1)(h) provides immunity for all claims

> [a]rising out of the issuance, denial, suspension or revocation of, . . . any . . . permit, license, certificate, approval, order or similar authorization where the governmental entity or its employee is authorized by law to determine whether or not such authorization should be issued, ... unless such issuance, ... or failure or refusal thereof, is of a malicious or arbitrary and capricious nature.

The negligence claims against MDHS are clearly based on allegations of actions and inactions by MDHS employees in the licensing and investigation of Weary's foster home. Compl. at ¶ 54. MDHS was the licensing authority over Weary's foster home and had authority to inspect Weary's home to assess whether it was suitable for placement. Miss. Code Ann. §§ 43-15-105, 43-15-115 (foster home inspections). Because the gist of Plaintiffs claims are allegations of improper placement due to improper investigation of Weary's foster home, all of Faye's claims are barred by § 11-46-9(1)(h). Faye's claims alleging improper screening, inspection and investigation of the Weary's foster home must be dismissed with prejudice based on the definitive immunity provisions of Mississippi Code § 43-15-125, and sovereign immunity provisions in Mississippi Code §11-46-9(1)(h). Alternatively, and in addition to the above cited immunities, there are other statutory immunities which shield MDHS from liability for Faye's claims. In no particular order, the other immunities are stated in the following paragraphs.

### 2. MDHS is immune from claims of arising from discretionary functions.

Sovereign immunity exists for claims "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." Miss. Code Ann. § 11-46-9(d). Faye generically alleges MDHS failed to follow its policies and procedures and Mississippi laws in the investigation and

screening of the foster home prior to placement, in the regular supervision and investigation of the foster home after placement, in determining and ensuring the safety of the children and in "failing to investigate the claims." Compl. at ¶¶ 54-58. All of these claims arise from MDHS employees' alleged failures to execute or perform, a statute, ordinance or regulation and are based on the exercise or performance or the failure to exercise or perform a discretionary function or duty and are exempt from the MTCA's waiver of immunity. Miss. Code Ann. § 11-46-9(1)(b),(d).[22]

The acts of MDHS employees in placing the children in foster care have been alleged by Faye as a failure to execute or perform duties required by MDHS regulations and "under the laws of the state of Mississippi." Compl. at ¶ 57. The Legislature has chosen to shield state agencies from claims arising from an employees' exercise of discretion in performing or the failing to perform duties pursuant to a statute, ordinance or regulation and thus MDHS retains sovereign immunity for claims arising from the performance or failure to perform discretionary functions or duties, whether or not it has abused its discretion. Miss. Code Ann. § 11-46-9(1)(d).

Faye also alleges MDHS failed to follow its policies and procedures and Mississippi law in the investigation and screening of the foster home prior to placement, in the regularly inspecting the foster home after placement, in failing to reasonably ensure the safety of the children and in failing to properly investigate the claims. Compl. at ¶ 58.  All of these allegations and claims pertain to the discretionary functions of MDHS when it takes custody of children like O.F. and K.S. MDHS's duties in making placement decisions are based on the exercise of judgment and discretion of MDHS employees. All of these allegations are claims of MDHS's employees performance or the failure to perform duties

---

[22] Mississippi Code § 11-46-9(1)(b) provides immunity for claims

Arising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid.

pursuant to a statute or regulation, and thus, fall within the exemption of Mississippi Code § 11-46-9(b). As these alleged actions fall within MDHS's discretionary functions, these claims are exempt from the MTCA's waiver of immunity and should be dismissed.

### 3. MDHS has immunity from claims of "improper placement."

In addition to the immunity provisions of Mississippi Code § 43-15-125, and sovereign immunity provisions in Mississippi Code § 11-46-9(1)(h), Faye's claims of improper placement are subject to Mississippi Code § 11-46-(9)(g) which provides immunity for claims involving discretionary duties in determining whether, and to what extent, to provide adequate governmental placement services. Where to place a child is a discretionary function exercised by MDHS employees. Faye alleges MDHS failed to follow its own (unidentified) procedures and policies when placing the minor children in the custody of Weary. Compl. at ¶ 40. Faye alleges further that MDHS failed to diligently investigate and screen the foster home of the children prior to placement. *Id.* at ¶ 58(a). Faye's allegations, however, do not articulate how MDHS employees' actions were anything but those which involve discretionary functions in taking children into custody and in determining the proper placement for them. MDHS employees' actions in taking custody of the children after Faye's arrest and in placing them with a licensed foster parent consistent with a youth court order fall under provisions of the Mississippi Code § 11-46-9(1)(g), and insulate MDHS from claims regarding the exercise of discretionary duties in providing adequate governmental services, which includes child placement decisions. Faye's failure to investigate claims should therefore be dismissed.

### 4. MDHS is immune from claims of a failure "to investigate."

In Count I of the complaint, Faye generically alleges MDHS failed to "properly investigate the claims." Compl. at ¶ 58(e). There are no facts, however, about what "claims" MDHS allegedly failed to investigate. MDHS cannot discern from the complaint what "claims" MDHS allegedly failed to investigate. The only allegation about any investigation of "a claim" is that MDHS substantiated sexual

24

abuse of the children, but did not substantiate the source. Compl. at ¶ 37.

   MDHS employee decisions about the extent of an investigation naturally involve an exercise of discretion in rendering adequate governmental services and claims regarding the adequacy of furnishing governmental services are exempt by statute. Miss. Code Ann. § 11-46-9(1)(g). Faye alleges MDHS investigated and substantiated the alleged abuse, but complains, without any specificity, MDHS failed to "properly investigate the claims." Compl. at ¶¶ 37; 58(e).  Regardless, the performance of and decisions made in an investigation by MDHS employees are an exercise of discretion in rendering adequate governmental services which are exempt from the waiver of liability under Miss. Code Ann. § 11-46-9(1)(g).  The failure to investigate claims should be dismissed.

### 5. The negligent infliction of emotional distress claims are barred by the MTCA.

   Faye alleges Weary, Hall and Raffeo negligently inflicted emotional distress on Plaintiffs. Compl. at Count III.  These claims are, however, barred by Mississippi Code § 11-46-7.  Faye contends Hall and Raffeo are MDHS employees and Weary was a foster parent and an "agent" of MDHS. Compl. at ¶¶ 5, 6, 7. Weary was a licensed foster care parent who was appointed to care for the children. [4](Am. Answer); Compl. at ¶ 21. Mississippi foster parents are deemed state employees and are covered under the MTCA. Miss. Code Ann. § 11-46-1(f)(ii). The MCTA provides:

> (1) The remedy provided by this chapter against a governmental entity or its employee is exclusive of any other civil action or civil proceeding by reason of the same subject matter against the governmental entity or its employee or. . .for the act or omission which gave rise to the claim or suit; and any claim made or suit filed against a governmental entity or its employee to recover damages for any injury for which immunity has been waived under this chapter shall be brought only under the provisions of this chapter, notwithstanding the provisions of any other law to the contrary.

> (2) An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's

conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.

Miss. Code Ann. § 11-46-7. Mississippi courts have consistently held that state employees acting within

the course and scope of their employment cannot be held personally liable for personal injury claims.

*See City of Jackson, Mississippi v. Brister*, 838 So. 2d 274 (Miss. 2003); *L.W. v. McComb Separate Municipal Sch.*

*Dist.*, 754 So. 2d 1136, 1141(Miss. 1999). Indeed, it has been held that a state employee could not be

held personally liable for negligence claims, including negligent infliction of emotional distress. *See Bell*

*v. Mississippi Dept. of Human Serv.*, 126 So. 3d 999, 1003-04 (Miss. Ct. App. 2013). Faye has not alleged

Hall, Raffeo or Weary were acting outside the course and scope of employment or duties with MDHS.

Thus, Plaintiff's claims for negligent infliction of emotional distress against Weary, Hall and Raffeo must

be dismissed for the failure to state a claim. F.R.C.P. 12(b)(6).

### 6. The negligence claims against Weary are barred.

Faye alleges Weary was negligent in failing to prevent harm to O.F. and K.S.[23] Compl. at ¶ 91.

In particular, Faye alleges Weary failed to ensure the children's safety from the "predatory actions of

those people residing under her roof," failing to carry out her duties imposed on her by MDHS and that

Weary's negligence caused the children to be molested while in the care of Watch Me Grow daycare.

*Id.* at ¶¶ 91-94. Faye alleges Weary was the children's foster parent and that she was an agent of MDHS.

*Id.* at ¶ 7. Weary admitted she was an MDHS licensed foster care parent. Am. Answer [4]. As stated,

foster parents are deemed state employees under the MTCA. Miss. Code Ann. § 11-46-1(f)(ii).

Mississippi state employees acting within the course and scope of their employment cannot be held

personally liable for personal injury claims, including negligence. *L.W.*, 754 So. 2d at 1141 (holding the

MTCA provided the exclusive civil remedy for alleged negligence in providing supervision, monitoring,

and a safe environment). There are no allegations Weary was acting outside the course and scope of her

---

[23]The complaint does not allege K.S. was diagnosed with gonorrhea or any infection or otherwise had any signs of an assault. As such, there are no facts to support a claim that K.S. was injured.

state employee-foster parent role. Because the MTCA is Faye's exclusive remedy against a state employee under Mississippi Code § 11-46-7, Weary cannot be held personally responsible for personal injury claims. Faye's claims must be dismissed for the failure to state a claim against Weary.

**C. Alternatively, Faye fails to state a claim under the MTCA against MDHS.**

Faye's claims under the MTCA are that MDHS employees violated unidentified policies and procedures in failing to screen, investigate, supervise, or monitor Weary, her home, the children's care and Watch Me Grow daycare. Compl. at ¶¶ 54-62. Faye's complaint, though, fails to state a claim for relief against MDHS for the same reasons it fails to state federal claims against Hall and Raffeo, *that is*, the complaint contains few factual allegations entitled to the assumption of truth and largely consists of legal conclusions and conclusory accusations lacking factual enhancement. The complaint enumerates only a smattering of facts which are entitled to an assumption of truth about MDHS and its employees: (1) MDHS took custody of the children after Faye was arrested; (2) MDHS filed a petition for custody of the children; (3) the youth court ordered MDHS to take custody of the children; (4) Hall and Raffeo represented to the youth court that Weary and her minor son resided in Weary's home; (5) Weary was the children's foster parent, (6) Hall and Raffeo placed the children in the care of Weary; (6) Hall and Raffeo sought medical testing and treatment for the children; (7) Hall and Raffeo reported the possible assault to authorities; and (8) MDHS substantiated abuse but could not identify the source of O.F.'s infection. *Id.* at ¶¶ 19, 21, 25-27, 31.

Even fewer "facts" are alleged in the complaint about foster parent Weary. Indeed, the only "fact" about Weary in the complaint is that she was assigned to care for the children as a foster parent. *Id.* at ¶ 21. Every other statement in the complaint about Weary is either conclusory, speculative accusation or claim. Faye defaults to her ipso facto claim that because Weary was the foster parent and O.F. was diagnosed with gonorrhea while in her care, then Weary must be negligent. Yet, there are no facts Weary abused the children in any way or that she knew the children were or had been harmed in

any manner. Faye alleges only that Weary was the "foster parent" of the children. *Id.* at ¶ 7. The reasonable inference is that Weary was a *licensed* foster parent whose application was accepted and approved of by MDHS. *See* Miss. Code Ann. § 43-15-105.

Faye makes only conclusory accusations that unidentified MDHS policies and procedures were violated by Hall, Raffeo or Weary. There are no "facts" in the complaint to support these allegations. As a result, Faye has failed to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). The same is true for the conclusory allegations of failures to inspect, monitor, and supervise the care of the children. All that can be gleaned from the complaint is that Hall and Raffeo placed the children with Weary, a foster parent, and were involved in their care when they sought medical exams and treatment for the children. No facts alleged support the naked allegations that MDHS employees failed to inspect, monitor, and supervise the care of the children.

Faye was required to plead more than just labels and conclusions. *Twombly*, 550 U.S. at 553. Faye was required to allege sufficient *facts* to state a claim for relief that is plausible on its face. *Iqbal,* 129 S. Ct. at 1949. The complaint does not contain factual content to permit the Court to draw reasonable inferences MDHS employees or Weary acted in such away which gives rise to MDHS liability. A complaint which pleads facts that are merely consistent with a defendant's liability, "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal citations). The complaint pleads so few well-plead facts which can be given an assumption of truth that Faye's claims against the MDHS fail to state a claim to relief and entitles MDHS to a dismissal under Rule 12(b)(6).

**D.  Res ipsa loquitur cannot be used to support Faye's constitutional claims**.

Faye's res ipsa loquitur claim is actually no claim at all. Res ipsa loquitur is not an element of a tort claim, rather it is an evidentiary rule which allows a jury to infer negligence and causation from circumstantial evidence. *Curtis v. Hinds County*, 2015 U.S. Dist. LEXIS 131270 (S.D. Miss. Sept. 29, 2015)(citation omitted).  Res ipsa loquitur cannot be used to account for any pleading deficiencies in a

complaint, nor can it be used to support a constitutional claim as it is only applied in negligence cases. *Hunt ex rel. Chiovari v. Dart*, 754 F. Supp. 2d 962, 977 (N.D. Ill. 2010) ("[T]he [res ipsa loquitor] doctrine is confined to negligence cases . . . and this is a constitutional tort case in which the plaintiff must prove intent."). Constitutional tort cases require proof of intent. *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006). The doctrine of "res ipsa loquitur" has no application in a civil rights case. *Gonzalez v. City of Fresno*, 2009 U.S. Dist. LEXIS 63266 (E.D. Cal. July 23, 2009) ("Res ipsa loquitur has no application in a civil rights case."). Consequently, the doctrine of res ipsa loquitur could not be used in cases to prove the "deliberate indifference" element of such a claim. *Aguirre v. Turner Constr. Co.*, 582 F.3d 808, 810-11 (7th Cir. 2009); *Gast v. Singleton*, 402 F. Supp. 2d 794, 799-800 (S.D. Tex. 2005) ("Supreme Court nor the Fifth Circuit has ever held that res ipsa loquitur may serve as a basis for municipal liability under §1983."); *Spears v. Meeks*, 2011 U.S. Dist. LEXIS 45186 (M.D. Ala. Apr. 26, 2011) (holding plaintiff could not use res ipsa loquitur to state a plausible § 1983 claim for deliberate indifference). Since Faye has not alleged sufficient facts to show a plausible violation of a constitutional right and because "res ipsa loquitur"cannot be used to fill in the factual blanks, Faye has failed to plead cognizable constitutional claims.

For the foregoing reasons, the Court should enter an order dismissing with prejudice,

(a)    Faye's § 1983 claims against Hall, Raffeo and Weary in their individual capacity for the failure to state a claim under Rule 12(b)(6);

(b)    Faye's claims against the MDHS, Hall, Raffeo and Weary in their official capacity based on Eleventh Amendment immunity;

(c)    Faye's state law claims against Hall, Raffeo and Weary;

(d)    Faye's federal law claims, if any, against MDHS based on Eleventh Amendment immunity; and sovereign immunity; and

(e)    Faye's MTCA claims against MDHS for failure to state a claim under Rule 12(b)(6).

This the 16th day of October, 2017.

**MISSISSIPPI DEPARTMENT OF HUMAN SERVICES, HARMONY RAFFEO, INDIVIDUALLY, AND AS AGENT FOR THE MISSISSIPPI DEPARTMENT OF HUMAN SERVICES, TEQUILA HALL, INDIVIDUALLY, AND AS AGENT FOR MISSISSIPPI DEPARTMENT OF HUMAN SERVICES, ERICA WEARY, INDIVIDUALLY AND AS AGENT FOR THE MISSISSIPPI DEPARTMENT OF HUMAN SERVICES**

**BY:    PAGE, MANNINO, PERESICH & McDERMOTT, P.L.L.C.**

**BY:    *s/ Stephen G. Peresich*_____**
**STEPHEN G. PERESICH, (MSB # 4114)**
**JOHANNA M. MCMULLAN, (MSB # 9901)**

PAGE, MANNINO, PERESICH,
& McDERMOTT, P.L.L.C.
Post Office Drawer 289
Biloxi, MS 39533
(228) 374-2100
(228) 432-5539
stephen.peresich@pmp.org
johanna.mcmullan@pmp.org

## CERTIFICATE OF SERVICE

I, Stephen G. Peresich, of the law firm of Page, Mannino, Peresich & McDermott, P.L.L.C., do hereby certify that I have this day electronically filed a true and correct copy of the foregoing pleading with the Clerk of the Court using the ECF system, which sent notification of such filing to the following ECF participants:

> *Attorney for Plaintiffs*
> Edward Gibson, Esq.
> HAWKINS/GIBSON, PLLC
> 153 Main St
> Bay St. Louis, MS 39520
> egibson@hgattorneys.com

This the 16th day of October, 2017.

$\quad\quad\quad\quad\quad\quad\quad\quad\quad\quad$ *s/ Stephen G. Peresich* $\quad\quad\quad\quad\quad\quad\quad$
$\quad\quad\quad\quad\quad\quad\quad\quad\quad\quad$ STEPHEN G. PERESICH, MSB #4114

PAGE, MANNINO, PERESICH,
& McDERMOTT, P.L.L.C.
Post Office Drawer 289
Biloxi, MS 39533
(228) 374-2100
(228) 432-5539
stephen.peresich@pmp.org

31