**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**ALEXANDRIA FAYE**                                              **PLAINTIFF**

**VERSUS**                                   **CIVIL ACTION NO.: 1:17-cv-00145-LG-RHW**

**MISSISSIPPI DEPARTMENT OF**
**HUMAN SERVICES, et al.**                                      **DEFENDANTS**

**REPLY SUPPORTING MOTION TO DISMISS**

**A. Federal Claims[1]**

    **1. Faye alleges insufficient facts to defeat qualified immunity or state a claim for relief.**

A defendant is entitled to qualified immunity at the motion to dismiss stage[2] where the complaint fails to allege facts sufficient to state a constitutional violation.[3] Thus, the court must first determine whether the facts make out a violation of a constitutional right.[4] Faye claims she sufficiently pleads[5] a constitutional due process violation by Hall and Raffeo, defeating the claim of qualified

---

[1] Faye concedes she has no federal claim against MDHS, or Hall or Raffeo, in their official capacities such that no further argument on those claims is required.

[2] To avoid a Rule 12(b)(6)-dismissal, a complaint must contain enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must plead factual content which allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. This standard demands more than a sheer possibility of defendant unlawful conduct. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556–57, 570). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. Here, Faye generally allege a broad range of conduct with few supporting facts. Instead, Faye was required to allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible" but failed to do so. *Twombly*, 550 U.S. at 547.

[3] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir.2012)("A plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.").

[4] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[5] In this case, there is only a complaint. [Doc. 1-2] (Comp.). There is no amended complaint.

immunity and the motion to dismiss.[6] In both respects, the complaint, however, fails to do so.

Faye claims Raffeo and Hall violated their due process rights to be free from unreasonable risk of harm and when they acted with deliberate indifference to the welfare of the children. Faye, however, alleges a broad range of actions and inactions by Raffeo and Hall which are not bolstered with "facts." Faye's recitals in the complaint are primarily conclusory and provide few actual facts about the conduct of Raffeo and Hall. When distilled, the only arguable facts she has alleged, as contrasted with conclusory assertions, are these: that (1) consistent with a youth court order, Raffeo and Hall placed the children with a licensed foster parent, Weary, (2) they represented that Weary and her son lived in the foster home, (3) they sought testing and treatment for the children and (4) they reported possible abuse to authorities. [Doc. 1-2](Comp. at ¶¶ 19, 21, 25-27, 31). These facts and all reasonable inferences fail to meet the plausibility standard to avoid a Rule 12(b)(6)-dismissal or make out a due process violation.

Faye recognizes the fact that MDHS's conducted an investigation into the alleged abuse which failed to identify the source of O.F.'s infection, but claims that the identity of the alleged perpetrator is irrelevant. To act with deliberate indifference, a state actor must consciously disregard a known and excessive risk to the plaintiff's health and safety.[7] There are no facts Raffeo or Hall, or MDHS for that matter, knew any alleged perpetrator or had any information that placing the children with Weary would constitute an unreasonable risk. Based on the factual allegations, the reasonable inference is that Raffeo and Hall were unaware of any risks to the children. As a result, they could not have *consciously* disregarded a known risk to the children.

The threadbare facts alleged in the complaint about the conduct of Hall and Raffeo simply fail

---

[6]Foster parent Erica Weary is a not a state actor. Thus, Faye has no constitutional claim against her. *See* Section A. 2, infra. Faye concedes she has no federal claims against MDHS [Doc. 12](Resp. at 13). Consequently, although denied, any federal claims against "Defendants" are as to Defendants Harmony Raffeo and Tequila Hall.

[7]*Hernandez ex rel. Hernandez v. Texas Dept. of Protective and Reg. Serv.*, 380 F.3d 872, 880 (5th Cir. 2004).

to meet the plausible claim standard and fail to overcome qualified immunity.[8]  Faye's claims should be dismissed.

### 2. Foster parents *are not* state actors for purposes of a 42 U.S.C. § 1983 action.

Faye argues Weary is a state actor for a § 1983-action due to the state's statutory scheme in licensing and regulating foster care.  This court has recently rejected the argument that foster parents are state actors under § 1983. *See Faulkner v. Mississippi Dept. of Human Services*, 1:16CV158-LG-RHW, 2016 WL 3661521, at *2 (S.D. Miss. July 5, 2016).  Other courts have agreed.[9]

Relying on *Howard v. Malac,* 270 F. Supp. 2d 132 (D. Mass. 2003),  Faye contends Weary is a state actor under the "entwinement doctrine" which provides that "acts performed by a private entity may constitute state action if there is 'pervasive entwinement' between the private entity and the government."  The court *Howard* recognized that "[u]sually, the answer to the question of whether the

---

[8] *See also* Section 5 of Defendants' memorandum [Doc. 8] for further argument on Faye's failure to state a plausible claim.

[9] *Hafez v. Madison,* 348 Fed. Appx. 465, 467 (11th Cir. 2009); *U. S. v. Peneaux*, 432 F.3d 882, 896 (8th Cir. 2005); *Rayburn v. Hogue*, 241 F.3d 1341 & n.10 (11th Cir. 2001); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 392 (4th Cir. 1990); *Milburn v. Anne Arundel County Dep't of Soc. Servs.*, 871 F.2d 474, 479 (4th Cir. 1989);  *Malachowski v. Keene*, 787 F.2d 704, 710 (1st Cir. 1986); *Lynn v. St. Anne Inst.*, 2006 U.S. Dist. LEXIS 18786 (N.D.N.Y Mar. 2, 2006).  Courts use three tests to evaluate whether the conduct of a private actor can be fairly attributable to the state for a § 1983-action: the "public function test," the "state compulsion test," and the "nexus test." *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549-50 (5th Cir. 2005) (citations omitted).  One court found that under any of the three tests, foster parents are not state actors:

> [Foster parents] do not qualify as state actors under the public function test. The care of foster children is not a power which has been exclusively reserved to the state. Neither are …[foster parents] state actors under the state compulsion test. The state did not exercise coercive power over them… Day-to-day parenting decisions were left to the judgment of the …[foster parents]. Finally, . . .[foster parents] are not state actors under the symbiotic relationship test. In this case, a sufficiently close nexus between the state and the challenged action is lacking. Although the …[foster parents] were required to be licensed, state regulation does not by itself convert a private party's action into that of the state. . . The fact that …[foster parents] received reimbursement from the state for expenses relating to the care of these children is equally nondispositive. Actions of a private party do not become state action merely because the government provides funding. . .

*Lintz v. Skipski,* 807 F. Supp. 1299, 1305-06 (W.D.Mich. 1992) (internal citations omitted).

state is connected to a foster parent's child abuse is a resounding no."[10] The court observed, after analyzing the tests used to determine whether a private entity is a state actor, that "in general, these doctrines yield the result that a foster parent cannot be considered a state actor."[11] In *Howard*, the facts were that the child-abusing foster parent colluded with a state employee to hide the abuse. On those facts, the court deemed the foster parent a state actor for the § 1983-action.[12] Faye raises no collusion or conspiracy allegations here.

Faye contends Mississippi statutes regulating foster care and MDHS's obligations attendant to the care of the state's children show a pervasive entwinement between MDHS and foster parents such that Weary should be considered a state actor under § 1983. Faye asserts that the state's classification of foster parents as "employees" for under the Mississippi Torts Claim Act evinces the entwinement of the state and foster parents. These arguments have been rejected by other courts and should be rejected here.[13] In the cases that have found that foster parents may be classified as state actors for federal civil rights claims, there were allegations of collusion between the foster parents and state officials.[14] Here, there are no facts or allegations in the complaint that Weary, Hall and Raffeo conspired or colluded in any manner resulting in harm to the children. Weary is not a state actor and the § 1983-claims against her must be dismissed.

---

[10] *Howard,* 270 F. Supp. at 145 (citation omitted).

[11] *Id.* at 144.

[12] *Id.* at 145.

[13] *See e.g., Marr v. Schofield*, 307 F. Supp. 2d 130 (D. Me. 2004); *Walker v. Johnson*, 891 F. Supp. 1040, 1051 (M.D. Pa. 1995); *Leshko v. Servis*, 423 F.3d 337, 342 (3d Cir. 2005).

[14] *See, e.g., K.H. v. Morgan*, 914 F.2d 846, 852 (7th Cir. 1990) (foster parent is state actor only when state knows foster parent is a child abuser); *Hawley v. Nelson*, 968 F. Supp. 1372, 1388 (E.D. Mo. 1997.

### 3. Defendants have not invoked federal jurisdiction or waived sovereign immunity.

MDHS has not and has never waived its sovereign immunity. Under the Eleventh Amendment, states may not be sued by its citizens in federal court and consenting to a federal forum does not bar a state from asserting a sovereign immunity defense under state law. Faye relies on *Meyers v. Texas*, 410 F.3d 236, 241 (5th Cir. Tex. 2005), in which the Fifth Circuit held that in removing the case to federal court, the state voluntarily invoked the *jurisdiction* of the federal court, waiving its immunity *from suit in federal court*. But, it did not decide whether the state was precluded from pursuing its immunity defense from liability under Texas sovereign immunity law. *Id.* In a second appeal in *Meyers v. Texas*, 454 F.3d 503, 504 (5th Cir. 2006), it was held:

> [t]he narrow holding in the instant case is that, under the Supreme Court's decision in *Lapides v. Bd. of Regents of Georgia*, 535 U.S. 613 . . . (2002), when a State removes to federal court a private state court suit based on a federal-law claim, it invokes federal jurisdiction and thus waives its unqualified right to object peremptorily to the federal district court's jurisdiction on the ground of state sovereign immunity. However, that waiver does not affect or limit the State's ability to assert whatever rights, immunities or defenses are provided for by its own sovereign immunity law to defeat the claims against the State finally and on their merits in the federal courts. In sum, Texas may assert its state sovereign immunity as defined by its own law as a defense against the plaintiffs' claims in the federal courts, but it may not use it to defeat federal jurisdiction or as a return ticket back to the state court system.

This court has echoed this opinion, holding that because there has been no Congressional abrogation of state sovereign immunity for § 1983-claims, the State of Mississippi has not waived its sovereign immunity from liability in suits arising under § 1983, among others.[15] The Fifth Circuit recently recognized again the *Lapides* holding and reiterated that "the Constitution permits and protects a state's right to relinquish its immunity from suit [i.e., consent to be sued in federal court] while retaining its

---

[15]*Delaney v. Miss. Dep't of Public Safety*, 2013 WL 286365 (S.D. Miss. Jan. 24, 2013) (citation omitted); *see also Palmisano v. Miss. Dep't of Wildlife, Fisheries, & Parks*, 2015 WL 1097403 (S.D. Miss. Mar. 11, 2015).

immunity from liability."[16] MDHS is an arm of the State and is protected by sovereign immunity from liability from the federal claims against it.[17]

### 4. Faye has failed to plead sufficient facts to support her federal claims.

As set out in Section A. 1. herein and Section IV. A. 5. of Defendants' memorandum [Doc. 8], Faye's complaint fails to state a claim because of the lack of *facts* to support her federal claims.

### B. State claims[18]

#### 1. MDHS is immune from claims regarding Weary's licensing as a foster parent, including screening of Weary's home.

Mississippi Code § 43-15-125 gives MDHS and its employees absolute immunity for screening a foster parent's home prior to approval and licensing which naturally occurs before a child is placed in a foster home. There are no facts to bolster the hypothetical allegations that MDHS did not screen Weary's home. MDHS and its employees have absolute immunity for these claims.[19]

#### 2. Defendants are immune for claims based on discretionary duties.

Faye contends MDHS had ministerial duties to supervise the Weary foster home which they breached. But, there is no factual support for the allegations MDHS failed to follow its policies and procedures or Mississippi law in the investigation and screening of the foster home prior to placement, in the supervision of the foster home after placement, in determining and ensuring the safety of the children or in failing to investigate unspecified claims. For example, Faye specifically contends MDHS

---

[16] 5*Skinner v. Gragg*, 2016 U.S. App. LEXIS 9442 (5th Cir. May 23, 2016) (citing *Meyers II*, 410 F.3d at 255).

[17] *Millsap v. Crosby*, 2014 WL 3548842, *2 (S.D. Miss. Jul. 17, 2014); *Williams v. Berry*, 977 F. Supp. 2d 621, 628 (S.D. Miss. 2013).

[18] Inasmuch as Faye concedes that the doctrine of res ipsa loquitur is an evidentiary rule and not a basis for a cause of action, no further argument on this issue is required.

[19] Faye relies on *Miss. Dept. of Human Serv. v. S.W.*, 974 So. 2d 253 (Miss. 2007), to argue that MDHS can be held liable for a failure of conducting monthly face-to-face contact with a foster parent. *S.W.* is distinguishable because the complaint was not being assessed on a motion to dismiss. Rather, the case was tried on the merits.

had ministerial duties to make face-to-face contact with the children within 72 hours of placement in the Weary home and a duty to make bi-monthly visits to the home. There are no facts, only speculation and conclusory allegations, that MDHS failed to do so. The only facts alleged in the complaint are that Raffeo and Harmony placed the children with a licensed foster parent, represented that Weary and her son lived in the foster home, sought testing and treatment for the children and reported possible abuse to authorities as they were required to do. [Doc. 1-2](Comp. at ¶¶ 19, 21, 25-27, 31).

Faye's claims stem from the alleged failures of MDHS employees which are based on their exercise or performance or the failure to exercise or perform a discretionary function or duty which are exempt from the MTCA's waiver of immunity under Mississippi Code §§ 11-46-9(1)(b) and (d). State agencies are immune from claims arising from an employees' exercise of discretion in performing or in failing to perform duties pursuant to a statute, ordinance or regulation. Miss. Code Ann. § 11-46-9(1)(d). Faye's claims pertain to the discretionary functions of MDHS after it takes custody of children pursuant to a youth court order. Consistent with the youth court order, MDHS had a duty to place the children with a licensed foster parent, which Faye concedes it did. MDHS employees, however, exercised their judgment and discretion in determining the licensed foster parent with whom to place the children. There are no facts to bolster the bald assertion that MDHS did not supervise the foster home to ensure the children's safety. Moreover, the are claims as to MDHS's employees' performance or the failure to perform duties which are discretionary functions entitled to immunity under the MTCA.

**3. MDHS is immune from claims based on "improper placement."**

Mississippi Code § 11-46-(9)(g) gives MDHS immunity for claims involving discretionary duties in determining whether, and to what extent, to provide adequate governmental services. Faye alleges MDHS failed to follow its procedures when placing the children with Weary, even though the complaint does not state any facts supporting this claim. According to the complaint, after Faye's arrest, the youth

court ordered the children into MDHS custody and MDHS placed the children with a licensed foster parent. These actions fall under provisions of the § 11-46-9(1)(g) which immunizes MDHS from claims involving the providing of adequate ("child placement") governmental services.

### 4. MDHS is immune from claims of a failure "to investigate."

The complaint states only generic and hypothetical allegations about MDHS's alleged failure to "investigate." Critically, the complaint does not identify what MDHS allegedly failed to investigate. The only facts about an investigation alleged by Faye are that MDHS investigated and substantiated sexual abuse allegations (which is denied). [Doc. 1-2](Compl. at ¶ 37). The extent of an investigation involves an exercise of discretion in rendering adequate governmental services. Claims regarding the adequacy of furnishing governmental services are exempt from the waiver of liability under § 11-46-9(1)(g).

### 5. The negligent infliction of emotional distress claims are barred by the MTCA.

Hall and Raffeo are MDHS employees and Weary as a foster parent is deemed a state employee. Miss. Code Ann. § 11-46-1(f)(ii). Mississippi state employees acting within the course and scope of their employment cannot be held personally liable for personal injury claims, including negligent infliction of emotional distress.[20] There are no allegations Hall, Raffeo or Weary were acting outside the course and scope of employment or duties with MDHS.

### 6. Negligence claims outside of the MTCA against Weary are barred.

This court has previously recognized that "[l]icensed foster parents like Weary are granted immunity from suit under State law as employees pursuant to Mississippi Code Annotated § 11-46-8." *Faye v. Mississippi Dept. of Human Serv.*, 1:15CV429-HSO-JCG, 2016 WL 4250417 (S.D. Miss. Aug. 10, 2016)(fn 5). At all relevant times, Weary was a licensed foster parent and considered a state employee.

---

[20]MTCA is the exclusive remedy for any claim against a state employee. Miss. Code Ann. § 11-46-7; see also. *City of Jackson, Mississippi v. Brister,* 838 So. 2d 274 (Miss. 2003); *L.W. v. McComb Separate Municipal Sch. Dist.*, 754 So. 2d 1136, 1141(Miss. 1999); *Bell v. MDHS*, 126 So. 3d 999, 1003-04 (Miss. Ct. App. 2013).

Miss. Code Ann. § 11-46-1(f)(ii). Mississippi state employees acting within the course and scope of their employment cannot be held personally liable for personal injury claims, including negligence, and the MTCA is the exclusive remedy for any claim against a state employee. Miss. Code Ann. § 11-46-7. Weary cannot be held personally liable for general negligence claims of the children.

**C. Faye's MTCA claims against MDHS should be dismissed.**

For the same reasons Faye fails to state federal claims against Defendants (*see* Section A. 1. herein) and for the reasons stated in Section C of Defendants memorandum [Doc. 8], Faye fails to state a claim against MDHS.

**D. Conclusion**

For these reasons and those more fully set out in Defendants' motion [Doc. 7] and supporting memorandum [Doc. 8], Faye's federal and state claims should be dismissed.

This the 29th day of November, 2017.

> **MISSISSIPPI DEPARTMENT OF HUMAN SERVICES, HARMONY RAFFEO, INDIVIDUALLY, AND AS AGENT FOR THE MISSISSIPPI DEPARTMENT OF HUMAN SERVICES, TEQUILA HALL, INDIVIDUALLY, AND AS AGENT FOR MISSISSIPPI DEPARTMENT OF HUMAN SERVICES, ERICA WEARY, INDIVIDUALLY AND AS AGENT FOR THE MISSISSIPPI DEPARTMENT OF HUMAN SERVICES**
>
> BY: **PAGE, MANNINO, PERESICH & McDERMOTT, P.L.L.C.**
>
> BY: *s/ Stephen G. Peresich*
> **STEPHEN G. PERESICH, (MSB # 4114)
> JOHANNA M. MCMULLAN, (MSB # 9901)**

PAGE, MANNINO, PERESICH,
& McDERMOTT, P.L.L.C.
Post Office Drawer 289
Biloxi, MS 39533
(228) 374-2100/(228) 432-5539
stephen.peresich@pmp.org
johanna.mcmullan@pmp.org

## CERTIFICATE OF SERVICE

I, Stephen G. Peresich, of the law firm of Page, Mannino, Peresich & McDermott, P.L.L.C., do hereby certify that I have this day electronically filed a true and correct copy of the foregoing pleading with the Clerk of the Court using the ECF system, which sent notification of such filing to the following ECF participants:

*Attorney for Plaintiffs*
Edward Gibson, Esq.
HAWKINS/GIBSON, PLLC
153 Main St
Bay St. Louis, MS 39520
egibson@hgattorneys.com

This the 29th day of November, 2017.

          *s/ Stephen G. Peresich*
STEPHEN G. PERESICH, MSB #4114

PAGE, MANNINO, PERESICH,
& McDERMOTT, P.L.L.C.
Post Office Drawer 289
Biloxi, MS 39533
(228) 374-2100
(228) 432-5539
stephen.peresich@pmp.org